Vincent J. McArdle Jr., Esq. Corporation Counsel, Albany
I am writing in response to your request for an opinion with regard to the legality of certain coin-operated video games. Your letter indicates that the City of Albany is considering the licensing of video games that simulate several card and dice games (poker, black jack, craps, etc.). The proposed games offer no credits or monetary pay-off, the purpose of the game being the accumulation of a high point score leading to extended play. You have asked whether such video games would violate the State's prohibition on gambling, making the games unlicensable under the city's game room legislation.
Article I, section 9 of the Constitution bans all forms of gambling not expressly authorized in the Constitution itself. As originally enacted, the Constitution of 1894 banned any and all forms of gambling. Exceptions have been made to allow for pari-mutuel betting on horse racing (1939); to allow for bingo or similar games of chance to raise funds for eleemosynary groups (1957); to allow for the establishment of the State lottery (1965); and to expand the special exception granted to eleemosynary groups (1975). Each of these exceptions was implemented by constitutional amendment. Recent opinions of this office have concluded that any expansion of legalized gambling in New York must be done by constitutional amendment (Op Atty Gen No. 84-F1 [proposed sports betting lottery]; 1981 Op Atty Gen 68 [proposed computer gambling lottery]).
Gambling and the concomitant gambling offenses are defined in article 225 of the Penal Law. "Gambling" is defined in the following way:
 "A person engages in gambling when he stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome" (Penal Law, § 225.00[2]).
The statute sets forth a three-pronged test to determine whether certain activity constitutes gambling: there must be: (1) a stake or a risk of something of value; (2) a contest of chance or a future contingent event not under the player's control or influence; and (3) receipt of something of value in the event of a certain outcome.
In the immediate case, the insertion of money necessary to activate the game satisfies the requirement of a "stake".
The second prong of the test, the "contest of chance" is defined in the Penal Law as follows:
 "* * * any contest, game, gaming scheme or gaming device in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein" (Penal Law, § 225.00[1]).
The statute only requires that the outcome be determined by chance to a material degree. Notably, a balancing test, necessitating that elements of chance outweigh those of skill, is not required. This dichotomy between skill and chance was addressed in People v Lavin (179 N.Y. 164
[1904]), a case which ruled on the legality of a contest to guess the number of cigars on which a certain tax was paid during the month of November, 1903:
 "Throwing dice is purely a game of chance, and chess is purely a game of skill. But games of cards do not cease to be games of chance because they call for the exercise of skill by the players, nor do games of billiards cease to be games of skill because at times, especially in the case of tyros, their result is determined by some unforeseen accident, usually called luck. The test of the character of the game is not whether it contains an element of chance or an element of skill, but which is the dominating element that determines the result of the game" (179 N Y at 170-171).
Unlike Lavin, in the immediate case it is not necessary to determine whether skill or chance is the dominating element in the game. The statute only requires that chance be a material factor, and expressly discounts the presence of some element of skill. If the subject video games reproduce various card and dice games by electronically shuffling and dealing cards, or electronically rolling dice, it cannot be denied that chance is playing a material role in the outcome, notwithstanding the exercise of skills by poker players and crap shooters. This same conclusion was reached by the Attorney General's 1981 opinion which held that electronic blackjack and poker could not be the basis for a State lottery (1981 Op Atty Gen 68, 73; see also National Football League vGovernor of the State of Delaware, 435 F. Supp. 1372 [DC Del, 1977]).
The final prong of the gambling test requires that something of value be received by the player in the event of a certain outcome. The games under consideration here do not issue any reward in the form of money, chits redeemable for money, or free games in the machine. The only pay-off is in the form of extended play on the machine which allows the player to accumulate points. The statutory scheme contemplates this scenario and considers extended play of this type "something of value" so as to constitute gambling. Something of value is defined as
 "* * * any money or property, any token, object or article exchangeable for money or property, or any form of credit or promise directly or indirectly contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge" (Penal Law, § 225.00[6]; [emphasis supplied]).
Because these machines satisfy all three parts of the test for gambling in section 225.00, their use constitutes gambling, and they run afoul of the City of Albany's game room licensing ordinance which renders such games unlicensable.*
The Penal Law also defines gambling devices and slot machines (Penal Law, § 225.00[7], [8]). Simply put, a gambling device includes any machine which can be used in the playing phases of any gambling activity, whether such activity consists of gambling between persons or gambling by one person involving the playing of a machine (id., § 225.00[7]). The video games under consideration would fit this definition of gambling device, and accordingly, their possession would be a crime as defined in the Penal Law (id., § 225.30).
Accordingly, we conclude that the operation of video games that electronically simulate the play of card and dice games involving a material element of chance, with a pay-off consisting of extended play, constitutes gambling as defined under section 225.00 of the Penal Law.
* In jurisdictions with statutory definitions of gambling similar to that of New York, similar results have been reached (see, Rosenkranz vVassallo, 473 A.2d 991 [NJ Super., AD 1984]; Commonwealth v TwoElectronic Poker Game Machines, 465 A.2d 973 [Pa, 1983]; Mills-Jenningsof Ohio, Inc. v Dept. of Liquor Control, 435 N.E.2d 407 [Ohio, 1982]).